**UNITED STATES, Appellee,**

v.

**Kevin C. DUNBAR, Electrician's Mate Third Class, U.S. Navy, Appellant.**

No. 62,967.

NMCM 88–3025.

U.S. Court of Military Appeals.

Argued Feb. 13, 1990.

Decided Sept. 19, 1990.

For Appellant: *Major Joseph B. Gilbert,* USMC (argued); *Captain Michael K.*

*Schaller,* USMC (on brief); *Lieutenant Nicholas Fitzgerald,* JAGC, USNR.

For Appellee: *Lieutenant John J. Mulrooney, II,* JAGC, USNR (argued); *Commander T.W. Osborne,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

In October 1985, a military judge sitting alone as a special court-martial convicted appellant, pursuant to his pleas, of a single unauthorized absence of 78 days and sentenced him to a bad-conduct discharge, confinement for 1 month, forfeiture of $413, and reduction to the lowest enlisted grade.[1] Pursuant to a pretrial agreement, the convening authority was obligated to disapprove the confinement and the forfeiture, but instead he approved the trial results despite the recommendation of the Staff Judge Advocate. Yet the undated court-martial order achieved the proper result by stating the sentence as the one agreed to rather than the one adjudged. The Court of Military Review affirmed. 28 MJ 972 (1989).

Based upon a delay of over 37 months between the date of his trial and the date that the record finally was docketed in the Court of Military Review, Dunbar renews the contention he first made below that he was denied a speedy review of his conviction and, thus, is entitled to dismissal of the charge underlying it. However, because appellant has not demonstrated any prejudice emanating from this unconscionable delay, we cannot accede to his prayer for relief.

I

This Court is called upon once again to assess what prejudice, if any, an appellant has suffered when his case has been subjected to inordinate and inexcusable delay after he has been tried. The Court of

---

1. The opinion below does not accurately reflect the sentence. 28 MJ 972, 973 (1989).

Military Review aptly described the issue as one where "appellant's case has languished for 1097 days in post-trial appellate (the time between the convening authority's action and docketing of the case by the Court of Military Review) limbo without explanation." 28 MJ at 975.

The facts as they relate to this delay are rather simple—and they do not paint a pretty picture of the Navy's post-trial case management. After he had been found guilty pursuant to his pleas of an unauthorized absence of less than 3 months, Dunbar requested during his sentence proceedings to be discharged from the Navy. In a pretrial agreement, the convening authority had agreed to disapprove all confinement that might be imposed if appellant received a punitive discharge as part of his sentence.[2]

Appellant's full trial, including sentencing, lasted just 43 minutes; and the entire verbatim record extended to just 24 pages. There are 4 prosecution exhibits; 14 defense exhibits; and 1 appellate exhibit of 4 pages. The military judge authenticated the record within 10 days, and the convening authority acted upon the record within 24 days.

Incredibly, the record did not reach the United States Navy–Marine Corps Appellate Review Activity (NAMARA) in Washington, D.C., until late July 1988, well over 2½ years after the convening authority had acted. The events in the several months preceding receipt of the record conjure mental images resembling the bumbling and bungling of a "Three Stooges" episode.

After much sea-to-sea, sea-to-land, and land-to-sea message traffic during April and May of 1988, it was concluded at last that the original record of trial had been lost—and a variety of possibilities came to mind as to how that might have happened. In any event, the Judge Advocate General wrote the convening authority and requested that the record either be located or reconstructed. Finally, the record was re-constructed; and the military judge authenticated it on July 7, 1988, without a number of papers and exhibits (including 13 defense exhibits).

On July 28, 1988, *two* records of appellant's trial arrived at NAMARA—the reconstructed record and what apparently was a photocopy of the original record that contained all the exhibits and was substantially similar to the reconstructed record. After much ado about this curious circumstance, the case—at long last—was docketed in the Court of Military Review on November 18, 1988—a total of 1121 days after the trial.

In what might be mere obeisance to the sadly obvious, the Government has offered no serious excuses for this extraordinary delay in the administrative mishandling of this rather ordinary record of trial. Instead, the Government responds to appellant's cries for relief by saying that there is nothing from which to relieve him—that is, appellant has suffered no prejudice from this delay, no matter how reprehensible it is. Accordingly, we reach the question— what is the nature of the prejudice that is material to our disposition of a complaint of delay of this nature?

## II

In addressing prejudice from appellant's claim of foul, the court below stated:

[D]ismissal of the charges is appropriate *only* when some error in the trial proceedings requires corrective action and the appellant would be prejudiced in the presentation of his case at a rehearing or when no useful purpose would otherwise be served by continuing the proceedings. [*United States v.*] *Green*, 4 M.J. [203] at 204 [ (CMA 1978) ]; *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973).

28 MJ at 975. The Government, likewise, relies heavily in this Court upon *Green* and

---

**2.** The special court-martial order promulgating the convening authority's action failed to mention the 1 month's confinement that had been adjudged. Apparently, though, appellant never served that confinement—or, at least, he never raised the issue on appeal.

its predicate precedent. Thus, our attention initially turns to that case.

*Green* involved a delay of some 8 months in forwarding the accused's signed petition for review from the staff judge advocate's office, where he had filed it, to this Court, after service on him of the decision of the Court of Military Review. Judge Cook's opinion there does reflect the notion found in the decision below in this case:

[A]bsent prejudicial error occurring during the court-martial proceedings, an inordinate delay at the appellate level does not justify dismissal of the charges. A dismissal is appropriate only where an accused "would be either prejudiced in the presentation of his case at a rehearing or . . . no useful purpose would otherwise be served by continuing the proceedings."

4 MJ at 204. Beyond that, however, little can be said with certainty in light of the two separate opinions.

Chief Judge Fletcher, concurring,

add[ed] that any "flagrant disregard" of the accused's appellate rights under circumstances which shock the conscience of this Court will not be condoned *even in the absence of particular prejudice to an individual accused.*

*Id.* (footnote omitted; emphasis added). Finally, Judge Perry concurred in the result because of "the absence of prejudice flowing to the appellant from the" delay— without specifically identifying what type of prejudice he had in mind.

Considering all three opinions in *Green*, we are unsure whether that case stands, unequivocally, for any absolute legal principle or standard. Thus, unconstrained but appropriately guided by this precedent, we examine "prejudice" from post-trial delay. Specifically, we are concerned with a claim of prejudice other than that which might inure to an accused at his rehearing or new trial ordered to remedy prejudicial error discovered on appeal.

It would seem that delay in finalizing a court-martial conviction reviewable under Articles 66 and 67, Uniform Code of Military Justice, 10 USC §§ 866 and 867, respectively, might occur at any of three stages: first, between completion of the trial and action by the convening authority; second, while pending resolution in an appellate court—either a Court of Military Review or this Court; and, finally, in the administrative handling and transportation of the record and critical documents either to the Court of Military Review or to this Court as a predicate for review. Logically, each of these three possibilities is quite different from the others.

The first—delay at the convening authority stage—was at issue in *United States v. Clevidence*, 14 MJ 17 (CMA 1982). There, appellant had been convicted by a special court-martial for failing to go to his appointed place of duty, disrespectful behavior toward a superior officer, and failure to obey orders, and had been sentenced to a bad-conduct discharge, confinement and forfeiture of $279 pay per month for 3 months. We set aside the findings and sentence and dismissed the charges because Clevidence had demonstrated that he had been specifically prejudiced in his pursuit of civilian employment by the lack of speedy review of his case by the convening authority. We took that action "in the exercise of our supervisory authority over military justice" in order to "halt the erosion in prompt post-trial review of courts-martial" by "register[ing] our emphatic disapproval of such 'inordinate and unexplained' delay in a case like this." *Id.* at 19. *See United States v. Sutton*, 15 MJ 235 (CMA 1983) (involving similar delay between the convening authority's action and the supervisory authority's action).

Thus, in the discretionary exercise of our supervisory authority, we took the opportunity in that case—involving relatively nonserious, military-type offenses where the appellant had demonstrated specific prejudice in his personal life flowing from the delay—to record our disapproval of this inexcusable delay as well as to sound a warning that continuation of such delicts might lead to return of a "draconian rule" in response. 14 MJ at 19. *Compare Dunlap v. Convening Authority*, 23 USCMA

135, 48 CMR 751 (1974) (when an accused is continuously under restraint after trial, the convening authority must take his post-trial action within 90 days of the end of trial or else a presumption of prejudicial denial of speedy disposition of the case would arise), *with United States v. Banks*, 7 MJ 92 (CMA 1979) (post-trial delay preceding the convening authority's action will be tested for prejudice, even when the accused is under continuous post-trial restraint).

The second possibility—delay in disposition of an appeal by an appellate court—would involve special considerations unlike any that come into play at the other two stages. In an appropriate case, it would be necessary to weigh those peculiar factors—such as deference to the uniqueness of judicial decisionmaking and hesitancy to pierce the shroud of that decisionmaking—against the need to resolve an appeal without extreme and unnecessary delay.

The third—delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court—is the least defensible of all and worthy of the least patience. Unlike action by the convening authority, this stage involves no discretion or judgment; and, unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations. Gross negligence—pure and simple—is all that can account for mishandling like that involved in *Green* and for the bungling or indifference reflected in this case.

At least where—as in *Clevidence*—the case involves relatively nonserious offenses, we would have little hesitancy to respond appropriately where an accused could demonstrate that such inexcusable delay in ministerial handling of a record caused him personal suffering apart and distinct from that flowing from the fact of a conviction. Such an accused has been punished for his misdeed through his sentence; he need not suffer added harm from reprehensible indifference to administrative responsibility.

III

Dunbar's claim of prejudice is not based on any error in his trial. Rather, according to his affidavit filed in the court below, it focuses on three aspects of his personal life that he contends were adversely affected by this untoward delay.

First, appellant, a resident of Washington State, allegedly has been unable to obtain unemployment insurance because he never received his discharge certificate, DD Form 214; however, appellate defense counsel could cite no state law that prescribes such a result. Second, appellant made the general assertion that he has been denied two college scholarships because he had not received his DD Form 214, although he failed to support this claim in his affidavit by identifying the institutions or organizations sponsoring the scholarships. Finally, appellant claimed that he has been denied employment in two instances, again due to his nonpossession of a DD Form 214; however, he failed to document his employment problems and their connection with his lack of discharge, and his affidavit fails to state whether he ever had contacted the Navy regarding his problems.

We agree with the Court of Military Review and with the Government's position in this Court that relief may not be predicated upon claims of prejudice that are unverified and unverifiable. This burden rests with appellant.

Moreover, appellant's omissions in supporting his various claims of prejudice cannot be inadvertent. The opinion in the court below, in arriving at a similar conclusion, offered a number of suggestions as to means by which appellant might carry his burden of documenting his prejudice. 28 MJ at 980 n. 5. However, even with the benefit of that court's gratuitous suggestions, he did not augment his efforts in this Court.

Accordingly, we conclude that, notwithstanding the egregious delay in this case, appellant has not demonstrated that he was

prejudiced therefrom and, thus, is entitled to no relief from this Court.

## IV

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in the result):

The standard applicable to allegations of appellate delay was announced in *United States v. Green*, 4 MJ 203, 204 (CMA 1978). That is, once a case has been acted upon by a convening authority, it is "at the appellate level." Dismissal of the charges "is appropriate only" when some error in the trial proceedings requires a rehearing, and appellant *"would be ... prejudiced ... at a rehearing"* because of the delay and " *'no useful purpose would ... be served by continuing the proceedings.'* " (Citations omitted; emphasis added). None of appellant's allegations of prejudice relates to a denial of his appellate rights or to prejudice at a rehearing.

The well-established rule is that

[t]he founders of this country wrote into the Sixth Amendment to the Constitution the right to a speedy and public trial. That right has been recognized in military law (see Article 10, Uniform Code of Military Justice, 10 USC § 810), but in neither the military nor the civilian law has such a privilege on appeal been so jealously guarded.

*United States v. Richmond*, 11 USCMA 142, 145, 28 CMR 366, 369 (1960).

On appeal, an appellant is stripped of his presumption of innocence. A record has been made, and there is no possibility of loss of evidence or witnesses due to delay. "Thus, while the importance of prompt appellate review of a conviction should not be deprecated, the constitutional and statutory bases for insisting on such action are less obvious than for compelling speedy trials." *United States v. Johnson*, 10 MJ 213, 218 (CMA 1981) (Everett, C.J., concurring in the result). "[W]hile no one would agree

that the" Government may try an accused without constitutionally required diligence, the same concerns do not apply after trial, for the Government "need not provide any appeal at all." *Ross v. Moffitt*, 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341, 351 (1974).

At the initial end of the spectrum of cases in the military appellate process are those cases involving inordinate and unexplained delay before the convening authority has acted on the findings and sentence.

In *United States v. Gray*, 22 USCMA 443, 47 CMR 484 (1973), and *United States v. Timmons*, 22 USCMA 226, 46 CMR 226 (1973), this Court held that post-trial delay alone (delay between the date of trial and the date convening authority acts) will not require relief on otherwise proper findings and sentence. Judge Duncan explained:

[B]efore ordering a dismissal of the charges because of post-trial delay there must be some error in the proceedings which requires that a rehearing be held and that because of the delay appellant would be either prejudiced in the presentation of his case at a rehearing or that no useful purpose would otherwise be served by continuing the proceedings. . . .

22 USCMA at 445, 47 CMR at 486. He went on to quote these comments from *United States v. Timmons*, 22 USCMA at 228, 46 CMR at 228:

Whatever reason might exist to deplore post-trial delay generally, we are loathe to declare that valid trial proceedings are invalid solely because of delays in the criminal process after trial.

In an effort to cure long delays prior to a convening authority's action, this Court established a 90–day rule of presumed prejudice for an appellant who remained in post-trial confinement without having had his case acted upon by the convening authority. The only available relief was dismissal of the charges. *See Dunlap v. Convening Authority*, 23 USCMA 135, 48 CMR 751 (1974) (11–month delay from date of original trial until case referred to trial on re-

hearing). The presumption of prejudice was based upon the role which the convening authority plays in a court-martial. The rationale was that a convening authority remains so close to the proceedings that the Government must move diligently within 90 days after trial, similar to the previous 90–day speedy-trial rule from *United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971), to ensure that a confined appellant suffers no prejudice from any delayed relief. Although this Court expressed its disfavor with such delay and continues to do so, "the draconian rule"[1] was later abandoned, and "applications for relief because of delay of final action by the convening authority" had to "be tested for prejudice." *United States v. Banks*, 7 MJ 92, 94 (CMA 1979).

Apparently this Court's disfavor for excessive post-trial delays was not enough to encourage the Government to be more diligent in providing expeditious actions by convening authorities. In *United States v. Clevidence*, 14 MJ 17 (CMA 1982), it was necessary to dismiss charges where there was a delay of 313 days between the date of trial and the supervisory authority's action. Central to this Court's decision was that Clevidence, who was not confined but was instead on appellate leave, had satisfactorily alleged that the post-trial delay had prejudiced him in trying to obtain employment since he had never received his discharge certificate. *Id.* at 19. *See also United States v. Sutton*, 15 MJ 235 (CMA 1983) (343–day delay between convening authority's action and supervisory authority's action warranted dismissal where appellant unable to obtain civilian employment).

In both *Clevidence* and *Sutton*, Judge Cook offered strong, prophetic dissents. Although "appalled" by the inordinate and "unexplained" post-trial delay, 15 MJ at 237, he took issue with the prejudice found in *Clevidence*, stating:

The ... accused's alleged difficulty in obtaining "good" employment because of the possibility of being returned to active duty—is highly speculative, easy to assert and difficult, if not impossible, to disprove. No doubt we will see more of such assertions in future cases.

14 MJ at 20.

At the other end of the spectrum of appellate process are those cases which are delayed once they reach the appellate court level. In *United States v. Green, supra*, 4 MJ at 203 (Cook, J.), this Court held that, although the Army failed to forward appellant's petition for review to this Court for over 240 days after the Court of Military Review had ruled on the case, the delay did not warrant reversal or dismissal because appellant could allege no prejudice. This Court reiterated that *Dunlap* predicated the presumption of prejudice from post-trial delay as applying to the convening authority "because of the conjunction of his responsibilities with those of the court-martial." For "a delay at the appellate level," however, "the doctrine of *Timmons* still controls."[2] 4 MJ at 204.

The delay in this case was unexplained and unjustified. Although such mismanagement of a case is fortunately the exception rather than the standard practice, an inexcusable delay has at one time or another permeated all of the services.[3] Unfortunately, even this Court has had occasion to experience the unavoidable or inexplicable delay. Appellate government counsel are left to stand before us, conjecturing that a record of trial was lost aboard a submarine beneath a polar ice cap, left in a foxhole during maneuvers, or discarded in a squad-

1. *United States v. Clevidence*, 14 MJ 17, 19 (CMA 1982).

2. In *United States v. Tucker*, 9 USCMA 587, 589, 26 CMR 367, 369 (1958), decided several years before *Timmons*, this Court held that delay over 1 year in forwarding a petition for review from the command to this Court warranted dismissal. Chief Judge Quinn warned that "[u]nexplained delays ... should not be tolerated by the services, and they will not be countenanced by this Court." A number of prejudicial errors had occurred in the trial proceedings.

3. See *United States v. Clevidence, supra* (Coast Guard); *United States v. Green*, 4 MJ 203 (CMA 1978) (Army); *cf. United States v. Veilleux*, 1 MJ 811 (AFCMR 1976) (Air Force).

ron's hangar. Military justice deserves better.

The appropriate remedy, the only remedy available to appellant, however, is to have his case heard on appeal. The United States Navy–Marine Corps Court of Military Review and this Court have afforded him that relief. He is entitled to nothing further.