# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 38882

———————————

### UNITED STATES
*Appellee*

**v.**

### Devin J. VANHISE
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 February 2017

———————————

*Military Judge:* Joshua E. Kastenberg (sitting alone).

*Approved sentence:* Dishonorable discharge, confinement for 46 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 30 April 2015 by GCM convened at Scott Air Force Base, Illinois.

*For Appellant:* Major Thomas A. Smith, USAF; Captain Annie W. Morgan, USAF.

*For Appellee:* Colonel Katherine E. Oler, USAF; Major Jeremy D. Gehman, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge JOHNSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

SPERANZA, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of four specifications of sexual assault of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b; one specification of violating 18 U.S.C. § 2251(a) by persuading a minor to take part in sexually explicit conduct for the purpose of transmitting a visual depiction of that conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934; one specification of knowing and wrongful possession of child pornography, in violation of Article 134, UCMJ; and one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The military judge sentenced Appellant to a dishonorable discharge, 46 months of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

On appeal, Appellant raises two assignments of error: (1) Whether a four-day violation of the 120-day post-trial processing standard for forwarding the record of trial for appellate review warrants modest relief under *United States v. Tardif,* 57 M.J. 219 (C.A.A.F. 2002); and (2) Whether Appellant is entitled to new post-trial processing because it was improper for the staff judge advocate (SJA) to solicit a victim statement from the parents of EB, neither of whom meet the definition of a "victim."[2] We find no prejudicial error and affirm.

---

[1] The military judge acquitted Appellant of one specification of sexual abuse of a child, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b; one specification of abusive sexual contact, two specifications of rape, and one specification of sexual assault, all in violation of Article 120, UCMJ, 10 U.S.C. § 920; and, one specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The military judge also found Appellant not guilty of one specification of sexual assault of a child after granting the Defense's motion for a finding of not guilty pursuant to Rule for Courts-Martial (R.C.M.) 917.

[2] In his brief, Appellant identified four other "potential issues" but did not brief them:

> (1) WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO DISMISS DUE TO DENIAL OF APPELLANT'S RIGHT TO A SPEEDY TRIAL UNDER ARTICLE 10, UCMJ.

> (2) WHETHER THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS.

*(Footnote continues on next page)*

## I. BACKGROUND

Appellant met EB online. Appellant coerced EB to engage in sexually explicit conduct—to include bestiality—to record this conduct, and to provide the videos to him. Appellant demanded EB engage in more deviant behavior and threatened to share videos of EB with others if she did not comply. Appellant eventually engaged in oral, vaginal, and anal sex with EB. Appellant knew EB was 15 years old at the time.

Less than a year after beginning his illicit relationship with EB, Appellant met BM at a base fitness center. Appellant then contacted BM through a social media messaging application. After exchanging messages with Appellant, BM agreed to meet him. On three occasions, Appellant and BM watched movies in Appellant's on-base dormitory room. The fourth time BM went to Appellant's room, Appellant anally raped her. BM was 16 years old at the time.

(3) WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN, AFTER CONDUCTING AN IN CAMERA REVIEW, HE FAILED TO DISCLOSE RELEVANT EVIDENCE CONTAINED IN B.M.'S MENTAL HEALTH RECORDS TO THE DEFENSE TO BE USED DURING SENTENCING.

(4) WHETHER SPECIFICATION 2 OF ADDITIONAL CHARGE I IS FACTUALLY SUFFICIENT.

Although not briefed by Appellant's counsel, we have carefully considered each of these "potential issues" in the course of our review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c). After considering the mandate under Article 10, UCMJ, 10 U.S.C. § 810, that the Government exercise reasonable diligence in bringing Appellant to trial and carefully balancing the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 533 (1972), we conclude that Appellant was not denied his right to a speedy trial. We also find that the military judge did not abuse his discretion in confirming probable cause existed to support the neutral and detached military magistrate's issuance of the contested search authorization. Furthermore, we note that during presentencing the military judge disclosed all but one page of BM's mental health records to the parties and, during sentencing, permitted trial defense counsel to extensively cross-examine BM on matters contained within those records. We find neither error nor prejudice in the failure to disclose the one page. Finally, we find Appellant's conviction of anally raping BM legally and factually sufficient. Article 66(c), UCMJ.

## II. DISCUSSION

### A. Post-Trial Processing Delay

The convening authority took action in this case 124 days after the completion of Appellant's trial. Accordingly, Appellant requests modest sentence relief due to the "presumptively unreasonable post-trial delay in the convening authority taking action." Appellant argues "[p]roviding relief in cases such as this is important to effectuate the deterrence that the Court of Appeals for the Armed Forces [CAAF] hoped *Tardif* and *Moreno* would produce."

There are two steps to our analysis of whether Appellant is entitled to relief. First, we determine whether the delay in this case amounts to a denial of Appellant's due process right to speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Next, even if we find no due process violation, we also consider whether this court should exercise its power under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant relief for excessive post-trial delay. *Tardif*, 57 M.J. at 224.

In *Moreno*, the CAAF established a presumption of unreasonable post-trial delay when the convening authority does not take action within 120 days of trial, when a record of trial is not docketed with the service court within 30 days of the convening authority's action, and when this court does not render a decision within 18 months of the case being docketed. 63 M.J. at 142.

We consider four factors in determining whether post-trial delay amounts to a violation of due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005) and *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). However, when an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As described above, the lapse of time between completion of Appellant's trial and the convening authority's action exceeded the *Moreno* standard by four days, establishing a facially unreasonable delay. *Moreno*, 63 M.J. at 142. Therefore, the next question we consider is whether Appellant has been prejudiced by the delay. *Toohey*, 63 M.J. at 362. Appellant does not identify any "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision," and we find

none. *Moreno*, 63 M.J. at 142. Although the Government's explanation for the delay is unsatisfactory as addressed below, balancing the remaining factors, the relatively limited period in excess of the *Moreno* standard coupled with the time in which the remaining phases were completed, convinces us the delay was not so egregious as to undermine the appearance of fairness and integrity within the military justice system. Therefore, we find no due process violation.

Next we consider whether Article 66(c), UCMJ, relief pursuant to *Tardif* is appropriate. 57 M.J. at 224. We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive. We are mindful of our superior court's admonition that "delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court is the least defensible of all [post-trial delays] and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990) (internal hyphens omitted).

Here, the 124 days that elapsed between trial and the convening authority's action exceeded the *Moreno* standard by only four days. However, only 14 days elapsed between the convening authority's action and docketing, compared to *Moreno's* standard of 30 days for a presumptively unreasonable delay. Although *Moreno* specifically established distinct standards for trial-to-action and action-to-docketing, and although efficiency in one phase of the process does not necessarily excuse neglect in another phase, on the whole the processing of Appellant's case has not been subjected to severe post-trial delay.

We must balance this absence of severe delay against the absence of any valid explanation for the delay. The Government provided an affidavit from the chief of military justice at the installation responsible for post-trial processing of Appellant's court-martial. This affidavit attributes delay to the time trial defense counsel and the military judge took to review the record of trial. Accordingly, the Government asserts:

> While the majority of the delay was awaiting the military judge's corrections to the record of trial, since Appellant is complaining of a mere 4-day violation of the *Moreno* standards with no showing of prejudice, the trial defense counsel's 25-day delay in reviewing the record of trial must be given due weight – as the government's processing from sentencing to action would only be 95 days [sic] without these defense delays.

The Government acknowledges "[t]he main source of delay was caused by transcription and review of the record of trial," but nonetheless invites us to

conclude that these circumstances weigh in its favor. As each of these circumstances was administrative in nature and within the control of the Government, we decline to reach the Government's conclusion.

Nevertheless, considering the remaining *Gay* factors we conclude no extraordinary exercise of our Article 66(c) authority is warranted here. We discern no particular harm to Appellant from the delay and Appellant has asserted none. The delay has not lessened the disciplinary effect of Appellant's sentence. The delay has not adversely affected this court's ability to review Appellant's case or grant him relief, if warranted. Taken as a whole, the circumstances do not move us to reduce an otherwise appropriate sentence adjudged by the military judge and approved by the convening authority in order to solely effectuate some measure of deterrence.

## B. SJA's Solicitation of Victim Impact Statement

In a post-trial memorandum, the installation SJA advised EB, in pertinent part, as follows:

> You may submit a statement in writing to the Convening Authority's SJA for consideration in advising the Convening Authority. The choice is entirely yours. This statement could describe the impact [Appellant's] crime had on your life. You may also discuss whether you believe the Convening Authority should approve the findings and sentence or grant some form of clemency, if authorized by law. However, your statement should not reference any crimes for which [Appellant] was not convicted of by the court-martial in order to avoid prejudice to his post-trial rights.

The memorandum included a first indorsement that EB was to sign and indicate whether or not she was submitting a statement.

After the staff judge advocate's recommendation (SJAR) was provided to the convening authority and served upon Appellant and his trial defense counsel, the installation SJA received a response to his memorandum to EB. However, EB did not sign the first indorsement. Instead, EB's mother signed the first indorsement and indicated that an attached statement was submitted. The attached statement was from the "Family of [EB]" and signed by EB's mother and father. The installation SJA confirmed receipt of the statement and formally served a copy of the statement upon Appellant and his trial defense counsel. In serving the statement upon Appellant and his trial defense counsel, the installation SJA advised:

> The submission of matters has not been presented to the convening authority so that you can have an opportunity to review it and reply to it, should you so desire…[Y]ou are invited to

6

make comment, including corrections or rebuttal, to any matter in the recommendation believed to be erroneous, inadequate, or misleading[.]

Appellant and his trial defense counsel acknowledged receipt of the statement.

In Appellant's request for clemency, his trial defense counsel did not object to the submission of the statement, but addressed it as follows: "Regarding the submission of matters by [EB's] family, I simply ask that you consider some error in their statement." Trial defense counsel then accepted the installation SJA's invitation and offered comments, rebuttal, and corrections to the family's statement. The convening authority's SJA provided the statement and Appellant's clemency matters to the convening authority as attachments to the Addendum to the SJAR.

Appellant now claims he "is entitled to new post-trial processing because it was improper for the [SJA] to solicit a victim statement from the parents of [EB], neither of whom meet the definition of a victim." Accordingly, Appellant argues:

> Including this letter was error because the family of [EB] did not meet the definition a victim of crime under Article 6(b).[3] The SJA [erred] when he allowed this letter to be submitted to the convening authority. The submission of a letter from a non-victim, requesting that Appellant's sentence remain unchanged, prejudiced Appellant. Appellant was further prejudices [sic] when the SJA failed to properly advise the convening authority to disregard the misleading information contained within the letter.

The proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F.

---

[3] Under Article 6b, UCMJ, 10 U.S.C. § 806b, "the term 'victim of an offense under this chapter' means an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under this chapter (the Uniform Code of Military Justice)[.]" 10 U.S.C. § 806b(b); *but see* 10 U.S.C. § 806b(c) ("In the case of a victim of an offense under this chapter…who is under 18 years of age (but who is not a member of the armed forces), incompetent, incapacitated, or deceased, the military judge shall designate a representative of the estate of the victim, *a family member*, or another suitable individual to assume the victim's rights under this section.") (Emphasis added).

Ct. Crim. App. 2004)). "If defense counsel does not make a timely comment on an omission [or error] in the SJA's recommendation, the error is waived unless it is prejudicial under a plain error analysis." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing Rule for Courts-Martial (R.C.M.) 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, Appellant must persuade this court that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65).

To meet the third prong of the plain error test in the context of a post-trial recommendation error, whether that error is preserved or is otherwise considered under the plain error doctrine, Appellant must make "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The low threshold for material prejudice with respect to an erroneous post-trial recommendation reflects the convening authority's vast power in granting clemency and is designed to avoid undue speculation as to how certain information might impact the convening authority's exercise of such broad discretion." *Id.* at 437. While the threshold is low, there must be some colorable showing of possible prejudice. *Id.*

The SJAR may include any additional matters deemed appropriate by the convening authority's SJA. R.C.M. 1106(d)(5). "Such matter may include matters outside the record." *Id.* Before taking action, the convening authority may consider "[s]uch matters as the convening authority deems appropriate. However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." R.C.M. 1107(b)(3)(B)(iii).

As an initial matter, the SJAs involved in the post-trial processing of Appellant's case did not solicit any statement from EB's family, contrary to Appellant's contention on appeal. Moreover, we find no error, plain or otherwise, in the submission and consideration of the matters introduced by EB's parents. The matters were properly served upon Appellant and his trial defense counsel. Appellant and his trial defense counsel were provided an opportunity to respond to the matters and did respond to the matters asserted in the statement. Therefore, Appellant was afforded the required due process. Additionally, matters submitted by a minor victim's parents are, in general, proper matters for a convening authority to consider prior to taking action. Furthermore, the specific matters submitted by EB's parents in this case were appropriate matters for the convening authority to consider prior to taking action. Finally, labeling EB's parents as "victims," "family of victim," or some similar term, did not impact the convening authority's ability to properly consider the matters they submitted.

Assuming *arguendo* that the submission and consideration of EB's parents' statement was in any way plain or obvious error, we find that Appellant failed to make some colorable showing of possible prejudice. Instead, Appellant reasserts his disagreement with some of the statement's content and then insists that he was prejudiced "when the SJA failed to properly advise the convening authority about the misleading information contained within the letter." However, Appellant's trial defense counsel offered comment, corrections, and rebuttal to the information contained within the statements. The SJA advised the convening authority that he must consider these matters submitted by the trial defense counsel. The SJA also advised the convening authority that he "may also consider the Record of Trial, [Appellant's] personnel records, and such other matters as you deem appropriate." The SJA's advice rightly left the consideration of the statement within the convening authority's discretion. In this case, the omission of advice in which the SJA personally assesses the information and assertions contained within the family's statement, in a manner consistent with Appellant's view of those matters, does not amount to a colorable showing of possible prejudice.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[4]

FOR THE COURT

LAQUITTA J. SMITH
Appellate Paralegal Specialist

---

[4] The General Court-Martial Order (CMO) incorrectly identifies 28 May 2015 as the date the sentence was adjudged. Accordingly, we order a corrected CMO.