# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32609**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jouvet R. APOSTOL**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 February 2021

————————————

*Military Judge:* Rebecca E. Schmidt.

*Sentence:* Sentence adjudged on 21 June 2019 by SpCM convened at Beale Air Force Base, California. Sentence entered by military judge on 10 July 2019: Bad-conduct discharge and confinement for 9 months.

*For Appellant:* Major Kirk W. Albertson, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, LEWIS, and CADOTTE, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Chief Judge J. JOHNSON and Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

LEWIS, Senior Judge:

In accordance with Appellant's pleas pursuant to a plea agreement, a special court-martial composed of a military judge sitting alone found Appellant guilty of one specification of larceny of military property, two specifications of

larceny of non-military property, and one specification of burglary, in violation of Articles 121 and 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 929.[1,2]

As part of his plea agreement with the convening authority, Appellant waived his right to a trial by members and requested to be tried by military judge alone. As such, the provisions outlined in Rule for Courts-Martial (R.C.M.) 705, *Plea agreements*, and R.C.M. 1002(d)(2), *Sentencing determination*, applied to Appellant's case.[3] The plea agreement specified the minimum and maximum confinement for each specification and required that all confinement periods be served concurrently. This resulted in a range of eight to ten months of confinement that could be adjudged.[4]

On 21 June 2019, the military judge accepted the plea agreement[5] and it became binding on the parties and the court-martial. *See* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d); *see also* R.C.M. 1002(a)(2) ("[T]he court-martial shall sentence the accused in accordance with the limits established by the plea agreement."). The military judge announced the sentence that same day. Consistent with the plea agreement, Appellant received a sentence of a bad-conduct discharge and confinement for nine months. On 2 July 2019, after considering Appellant's clemency submission and consulting with the staff judge advocate,

---

[1] The specifications covered the time period from 1 January 2019 to 24 April 2019. Unless otherwise specified, references to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). Further, the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016), as fully implemented by Exec. Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018), applied to Appellant's court-martial and post-trial processing.

[2] In the plea agreement, the convening authority agreed to refer the charges and specifications to a special court-martial rather than direct a preliminary hearing under Article 32, UCMJ, 10 U.S.C. § 832. The convening authority also agreed to withdraw and dismiss with prejudice one charge and specification alleging wrongful possession of a controlled substance in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

[3] *See* Exec. Order 13,825, §§ 5 and 10, 83 Fed. Reg. at 9890–91.

[4] The plea agreement did not allow certain punishments to be adjudged including hard labor without confinement and restriction to specified limits. The plea agreement set a maximum fine amount of $0.00 for each specification.

[5] Before accepting the plea agreement, the military judge ruled that one term violated R.C.M. 705 and public policy. That term was severed from the plea agreement at the request of the parties. The severance of this one term is not an issue in this appeal.

the convening authority took no action on the findings or sentence.[6] On 10 July 2019, the military judge signed the entry of judgment (EoJ). The record of trial was docketed with our court on 19 August 2019.

Appellant raises one assignment of error: whether he is entitled to sentence appropriateness relief for post-trial delay. We find no material prejudice to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

In late April 2019, Appellant was facing involuntary administrative separation from the Air Force for misconduct. He found himself in this position because he had been convicted in January 2019 at a special court-martial for larceny of 95 items of electronic merchandise worth a combined value of $14,500.00, the property of the Army and Air Force Exchange Service (AAFES).[7] A bad-conduct discharge was not adjudged in Appellant's first court-martial and, by late April 2019, Appellant had completed his 60-day confinement term and was performing duties around the operations group building while awaiting administrative discharge.[8] Appellant had retained a master key to the operations group building from an earlier stint as a facility manager despite "being required" to turn the key in when he had been relieved of those duties.

Appellant used this master key on or about 20 April 2019 to break and enter into the operations group building and offices inside it with the intent to commit larceny.[9] Once inside, Appellant stole a number of items, placed them in his vehicle, and then drove to his rented off-base storage unit to unload them. Appellant then returned to the operations group building, stole more

---

[6] Based on the dates of the offenses and Appellant's sentence, Article 60a, UCMJ, 10 U.S.C. § 860a, and R.C.M. 1109 guided the convening authority's decision on action. *See* Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. at 9890.

[7] These facts are taken from the stipulation of fact in this case which described Appellant's first trial. Additionally, the court-martial order from the first trial was admitted as a prosecution exhibit during sentencing.

[8] Given the sentence, our court did not review the first court-martial under Article 66, UCMJ, 10 U.S.C. § 866 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

[9] For offenses on or after 1 January 2019, Article 129(a), UCMJ, Burglary, only requires a breaking and entering of a "building or structure of another" with an intent to commit an offense under the UCMJ. 2019 *MCM*, pt. IV, ¶ 79.a. The prior statute, for offenses committed before 1 January 2019, defined burglary as breaking and entering "in the nighttime, the dwelling house of another" with an intent to commit certain offenses under the UCMJ. 2016 *MCM*, pt. IV, ¶ 55.a.

items, and made a second trip to his storage unit. Appellant stipulated that he stole $16,337.00 worth of the Air Force's military property and $1,300.00 of non-military property.

By 23 April 2019, some of the stolen items were reported missing and security forces investigators began looking into the matter. The investigators knew that Appellant had used an off-base storage unit in connection with the merchandise he stole from AAFES and so they visited that business to see if Appellant still rented a storage unit there. He did. A review of the surveillance footage showed Appellant placing items in the unit that matched the descriptions of some of the stolen items. Investigators also discovered that Appellant did a pre-move survey with a traffic management office employee at the storage unit so that all of the items inside could be shipped to Appellant's home of record by a contracted moving company. With this information, on 25 April 2019, Appellant's commander ordered him into pretrial confinement. On 1 May 2019, the Yuba County Sheriff's Office obtained a warrant to search Appellant's storage unit and seized the stolen items.

Before us, Appellant argues that his due process right to speedy post-trial processing was violated because it took 40 days from the date the military judge signed the EoJ on 10 July 2019 until the date the record of trial was docketed with our court on 19 August 2019. If we do not find a due process violation, Appellant requests we grant relief using our authority under Article 66, UCMJ, 10 U.S.C. § 866.

The Government moved to attach a declaration of the case paralegal who worked on Appellant's case while assigned at the Beale Air Force Base legal office to explain some of the reason for the delay in docketing. The motion to attach was not opposed and we granted it.[10] The case paralegal's declaration shows that the record of trial was erroneously mailed on 22 July 2019 to the legal office at Headquarters Twenty-Fifth Air Force. As Appellant's case was a special court-martial, the record should have been mailed directly to the Military Justice Division located at Joint Base Andrews, Maryland. On 30 July 2019, the Beale Air Force Base legal office was informed of their error and was told the record would be forwarded directly to the Military Justice Division on their behalf. The declaration does not state the date the record was mailed to Joint Base Andrews or when it arrived.

Appellant notes in his reply brief that the delay in mailing described by the case paralegal only accounts for eight days. Appellant argues the Government

---

[10] We understand that we are permitted to consider declarations from outside the record of trial when necessary to resolve issues raised by materials in the record of trial, like this post-trial delay. *See United States v. Jessie*, 79 M.J. 437, 442–44 (C.A.A.F. 2020).

did not attempt to explain why 19 days elapsed between the discovery of the erroneous mailing and the docketing of the case with our court.

## II. LAW AND ANALYSIS

We review whether an appellant has been denied the due process right to a speedy post-trial review de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006); *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). *Moreno* established a presumption of unreasonable delay, triggering the *Barker v. Wingo*, 407 U.S. 514 (1972), four-factor analysis, where "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *Moreno*, 63 M.J. at 142. "Delays involving this essentially clerical task have been categorized as the 'least defensible of all' post-trial delays." *Id.* at 137 (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)).

In cases of facially unreasonable delay, we use the four-factor analysis set forth in *Barker*, 407 U.S. at 530: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). When this four-factor analysis is triggered, the factors are balanced, with "no single factor being required to find that post-trial delay constitutes a due process violation." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

However, the United States Court of Appeals for the Armed Forces (CAAF) has held that where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF adopted a post-trial delay framework for analyzing prejudice using the following interests: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." 63 M.J. at 138–39 (citations omitted).

"[A] Court of Criminal Appeals has authority under Article 66[, UCMJ,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C. § 859(a),] if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citations omitted). We consider the factors announced in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), to determine if *Tardif* relief is appropriate.

As we recently noted in *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020), the due process right to timely post-trial review that the CAAF sought to safeguard in *Moreno* endures for cases referred on or after 1 January 2019 and the new post-trial processing rules. We also explained that

> [a]dapting the *Moreno* analysis to the new rules will not be a simple matter of substituting the military judge's "entry of judgment"—or the convening authority's decision whether to take action on the trial results, or the certification or completion of the record of trial, or any other post-trial event—into the place of "convening authority action" within the *Moreno* framework for determining facially unreasonable delay.

*Id.* (quoting *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at \*5 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.)). In *Livak*, we decided to apply an aggregate standard threshold of 150 days from the day of sentencing to the day of docketing after finding it appropriately protected an appellant's due process right to timely post-trial review and was consistent with *Moreno*. *Id.* at 633–34 (citation omitted).

Here, the total number of days from the announcement of sentence to docketing with our court is 59 days. This is well within the 150-day aggregate standard we set forth in *Livak* and we therefore find no facially unreasonable post-trial delay and no due process violation.

Even if we assume there is a facially unreasonable delay and assess the four *Barker* factors, we still find no due process violation. In that assessment, the first *Barker* factor—the length of the delay—weighs in Appellant's favor. The second *Barker* factor—the reason for the delay—also weighs in Appellant's favor as the Government erroneously mailed the record to the wrong location and then offered no explanation for the subsequent delay in docketing the case with our court. The third *Barker* factor—the assertion of the right to timely review and appeal—weighs slightly in the Government's favor as Appellant did not demand speedy post-trial processing or appeal at any point. The fourth *Barker* factor—prejudice—weighs in the Government's favor based on the post-trial delay framework and our evaluation of Appellant's three interests. First, where the appellant does not prevail on the substantive grounds of his appeal, as in this case, there is no oppressive incarceration. *Moreno*, 63 M.J. at 139. Second, where an appeal results in our affirming the findings and sentence, like here, an appellant's ability to present a defense at a rehearing is not impaired. *See id.* at 140. Third, with regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Here, appellate defense counsel has only claimed "the delay may have caused [Appellant]

uncertainty and stress regarding the conclusion of his Air Force career and transition back to civilian life." We find Appellant's qualified statement about uncertainty and stress insufficient to show particularized anxiety and concern that is distinguishable from other Airmen awaiting post-trial processing and appeal.

Further, absent a finding of prejudice as a result of delay, there is no due process violation unless it "adversely affect[ed] the public's perception of the fairness and integrity of the military justice system." *See Toohey*, 63 M.J. at 362. We do not find the post-trial delay from the erroneous mailing and rerouting of the record of trial is to the degree that it adversely affected public perception of fairness and integrity as articulated by *Toohey*.

We have considered whether relief is appropriate under the circumstances for excessive post-trial delay without a showing of prejudice under our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority. *See Tardif*, 57 M.J. at 224 (citation omitted). Considering all the facts and circumstances, and applying the factors articulated in *Gay*, we decline to do so. *See id.* at 223–24; *Gay*, 74 M.J. at 744. We find relief inappropriate because it took only 59 days from the date Appellant was sentenced to the date his record of trial was docketed with our court.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.[11]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[11] We note the Statement of Trial Results failed to include the command that convened this court-martial as required by R.C.M. 1101(a)(3). Appellant has claimed no prejudice and we find none. *See Moody-Neukom*, unpub. op. at \*2–3.