# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

### No. ACM 38873 (f rev)

————————————

### UNITED STATES
*Appellee*

**v.**

### Michael J. TURPIANO
Major (O-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 September 2019

————————————

*Military Judge:* Vance H. Spath (trial and *DuBay* hearing).

*Approved sentence:* Confinement for 3 months, forfeiture of $7,353.00 pay per month for 3 months, and a reprimand. Sentence adjudged 16 January 2015 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Mark C. Bruegger, USAF; Jack B. Zimmermann, Esquire; Terri R. Zimmermann, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Matthew Tusing, USAF; Captain Zachary T. West, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, J. JOHNSON, and KEY, *Appellate Military Judges*.

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MAYBERRY, Chief Judge:

## I. BACKGROUND

This case is before us for the second time. In January 2015, a general court-martial composed of officer members convicted Appellant, contrary to his pleas, of assault consummated by a battery by touching the breast of Second Lieutenant (2d Lt) RH and touching the mid-section of 2d Lt CE, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The adjudged and original approved sentence consisted of a dismissal, confinement for three months, forfeiture of $7,353.00 pay per month for three months, and a reprimand.

Appellant initially alleged ten assignments of error (AOEs): (1) the findings of guilt are factually insufficient; (2) trial counsel (TC) committed reversible error by failing to disclose favorable information; (3) the Addendum to the Staff Judge Advocate Recommendation (SJAR) and subsequent action by the convening authority (CA) are defective; (4) the military judge gave an erroneous mistake of fact instruction as to the offense involving 2d Lt RH; (5) the military judge erroneously instructed the members that they "must convict" if they believed the Government proved its case; (6) the military judge gave an erroneous instruction on witness credibility; (7) Appellant was deprived of his constitutional right to effective assistance of counsel; (8) the sentence is inappropriately severe; (9) the military judge erred in allowing the members to consider an unsworn statement from 2d Lt RH at sentencing; and (10) there was excessive post-trial delay.

In our original opinion, *United States v. Turpiano (Turpiano I)*, No. ACM 38873, 2018 CCA LEXIS 276 (A.F. Ct. Crim. App. 24 May 2018) (unpub. op.), we held, inter alia, that the Addendum to the SJAR and subsequent action by the CA were defective, that error prejudiced a substantial right of Appellant, and remanded the case for new post-trial processing.[3] New post-trial pro-

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant was acquitted of rape and assault consummated by a battery of Ms. KP and assault consummated by a battery of 2d Lt DC.

[3] Because of our decision to remand the case for new post-trial processing, we deferred consideration of Appellant's request for excessive post-trial delay relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002).

cessing occurred and the CA ultimately only approved three months of confinement, forfeiture of $7,353.00 pay per month for three months, and a reprimand. The CA disapproved the dismissal.[4]

In Appellant's initial AOE he requested we set aside his dismissal due to the unreasonable post-trial delays. Appellant now re-asserts and expands his allegation of post-trial processing delays and requests we set aside his convictions. In addition to his own case, Appellant cites to 17 other cases processed by Joint Base San Antonio-Lackland with significant post-trial processing issues. We incorporate the decision contained in *Turpiano I* and affirm the findings. We further find relief is warranted due to the excessive post-trial processing delays in the form of reducing the forfeiture of pay per month to $7,353 pay per month for two months.

## II. DISCUSSION

### A. Post-Trial Processing Delay

Appellant asserts that the collective post-trial processing delays warrant relief. Appellant requests we set aside the convictions. We agree that the post-trial processing delays both after the initial trial and on remand warrant relief. We do not agree that setting aside the convictions is appropriate, but reduce the forfeiture of pay to $7,353.00 per month for two months.

### 1. Facts

#### a. Original post-trial processing timeline:

| DATE | EVENT | Days Elapsed/ Days > Moreno Std |
|---|---|---|
| 16 Jan 15 | Trial concludes; Appellant sentenced | 0 |
| 7 Apr 15 | Military Judge authenticated record | 81 |
| 4 May 15 | SJAR completed | 108 |
| 11 May 15 | SJAR served on Appellant | 115 |
| 10 Jun 15 | Clemency submitted (30-day extension granted) | 145/25 |

---

[4] As will be discussed in this opinion, multiple actions were signed by the CA prior to the case being re-docketed with this court for further review.

| 10 Jul 15 | JA completes investigation of issues raised in Appellant's clemency matters; SJAR Addendum completed | 175/55 |
|---|---|---|
| 24 Jul 15 | CA signs action | 189/69 |
| 31 Aug 15 | Case docketed with the court of criminal appeals (CCA) | 227/8 |

### b. Post-remand post-trial processing timeline:

| DATE | EVENT | Days Elapsed/ Days > Moreno Std |
|---|---|---|
| 24 May 18 | CCA DECISION[5] | 0 |
| 2 Jul 18 | CCA denied request for reconsideration | 0 |
| 10 Jul 18 | Case returned for new post-trial processing | 0 |
| 18 Jul 18 | SJAR completed and served on Appellant | 8 |
| 17 Aug 18 | Appellant submits clemency matters (20-day extension granted) | 38 |
| 24 Aug 18 | SJAR emailed to victims; informed of their right to submit matters | 45 |
| 14 Sep 18 | Base legal office follows up with victim stmts | 66 |
| 18 Sep 18 | Base legal office resends SJAR to one victim | 70 |
| 20 Sep 18 | One victim declines to submit matters; the other never responds | 72 |

---

[5] The decision was not issued within 18 months of docketing. This was due in part to this court's order that a post-trial hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967), be held to address allegations involving discovery violations, improper post-trial processing and ineffective assistance of counsel. The *DuBay* hearing was held in August 2017 and supplemental briefs were filed by the parties in November 2017.

| 5 Oct 18 | 1st SJAR Addendum completed | 87 |
|---|---|---|
| 10 Oct 18 | 1st SJAR Addendum served on Appellant; Appellant emails CA directly | 92 |
| 23 Oct 18 | 2d SJAR Addendum completed | 105 |
| 21 Dec 18 | CA signs action; Court-Martial Order (CMO) No. 7 issued | 164/44 |
| 26 Feb 19 | CMO No. 10 revoked CMO No. 7 and CMO No. 11 completed | 231/111 |
| 22 Mar 19 | Case re-docketed with CCA | 256/92 |

The second action in this case—which disapproved Appellant's dismissal—and the corresponding CMO No. 7, dated 21 December 2018, contained language incorrectly indicating the record would be forwarded to The Judge Advocate General (TJAG) for examination under Article 69(a), UCMJ, 10 U.S.C. § 869(a). Additionally, Appellant's social security number was wrong. Appellant was not aware that his social security number was wrong on CMO No. 7 because he received a copy of CMO No. 7 with the number redacted prior to the holidays in December 2018. On 1 February 2019, Appellant received orders returning him to active duty with a report no later than date (RNLTD) of 28 February 2019. Shortly after returning to active duty, Appellant requested and eventually received an unredacted copy of CMO No. 7 for the purpose of in-processing at which point he identified the erroneous social security number.

Immediately after Appellant learned of the social security number error on 7 March 2019, he notified his counsel who in turn notified the base legal office. The base legal office representative indicated they would have it corrected. On 11 March 2019, a member of Appellant's trial defense counsel's office provided the correct social security number to the base legal office. However, the general court-martial convening authority (GCMCA) legal office who forwarded the erroneous action was not aware of the error until after it was sent to the Military Justice Division of the Air Force Legal Operations Agency (AFLOA/JAJM) on 15 March 2019.

In the meantime, on 7 February 2019, Appellant's appellate defense counsel emailed the Chief of the Appellate Records Branch of AFLOA/JAJM, Ms. HS, to inquire as to the status of the CA's action, which had not yet been forwarded to this court, and which was necessary to complete appellate review. Ms. HS informed appellate defense counsel that although she was still awaiting receipt of the documents, the case would not be returned to this court "because the dismissal was gone." Instead, she believed Appellant's case would

be forwarded to TJAG for an Article 69(a), UCMJ, review. Appellate defense counsel, citing *United States v. Johnson*, 45 M.J. 88 (C.A.A.F. 1996), referred Ms. HS to Rule 2.1 of the court's Rules of Practice and Procedure which states that the court "retains jurisdiction over cases initially reviewed under Article 66, UCMJ, that are remanded for further proceedings, notwithstanding any subsequent reduction of the sentence below the level requiring review pursuant to Article 66(b), UCMJ."[6] Ms. HS indicated she would engage with the court staff for its interpretation and instructed the base to send her all post-trial documents they had that pertained to Appellant's case.

On or about 13 February 2019, Ms. HS contacted the GCMCA legal office to inform them the format of the action was incorrect and required correction. On 15 February 2019, Ms. HS contacted Appellant's appellate defense counsel to inform him that she was still waiting on documents, but once they were received, the case would be returned to this court. On 27 February and 13 March 2019, Ms. HS informed appellate defense counsel that the complete post-trial package had not yet been received. On 22 March 2019, the Air Force Appellate Defense Division (AFLOA/JAJA) received a copy of the post-trial processing package, including an action dated 26 February 2019, and CMOs No. 10 and 11, all of which had the same erroneous social security number for Appellant. The case was re-docketed with the court on 22 March 2019, 256 days from date returned to CA for action. In summary, original post-trial processing delays consisted of 189 days from sentence to action and 38 days from action to docketing. Remand post-trial processing took 164 days from return of the case to action and 92 days from action to docketing.

**2. Law**

In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the United States Court of Appeals for the Armed Forces (CAAF) established a presumption of a facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial[,]" when "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action[,]" and when "appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals."

Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely re-

---

[6] Formerly A.F. Ct. Crim. App. R. 2.1 (dated 19 May 2017); currently A.F. Ct. Crim. App. R. 5.1 (effective 1 August 2019).

view and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533).

In *Moreno*, the CAAF identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–40 (citations omitted).

In *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002), the CAAF recognized this court has the de novo power and responsibility under Article 66(c), UCMJ, to disapprove any portion of a sentence that it determines, on the basis of the entire record, should not be approved, even absent any actual prejudice. In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the Government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide any meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.*

Rule for Courts-Martial (R.C.M.) 1105A provides that crime victims of the offenses submit matters to the convening authority within ten days of the later of (1) receipt (or waiver of the right to receive) a copy of the record, or (2) receipt of the SJAR. The Rule further provides that if a victim shows additional time is required, "the convening authority or other person taking action, for good cause, may extend the submission period for not more than an additional 20 days." R.C.M. 1105A(d)(3). Furthermore, the Rule states that "[f]ailure to submit a statement within the time prescribed by this rule shall be deemed a waiver of the right to submit such a statement." R.C.M. 1105A(f)(1).

### 3. Analysis

Our 24 May 2018 opinion held the original 24 July 2015 action and associated CMO No. 13 were defective. This necessitated remanding the case for new post-trial processing, which ultimately generated the 21 December 2018 action and associated CMO No. 7, CMO No. 10 and the 26 February action, and CMO No. 11. Appellant asserts the post-trial errors and delays in his case, along with more than a dozen other cases in the past few years, are "clear evidence of gross indifference and institutional neglect."

The first *Barker* factor weighs heavily in favor of Appellant in that the length of the delay covering both post-trial processing efforts is facially unreasonable. The initial post-trial processing involved facially unreasonable delays of 69 days from the announcement of sentence to the original action and eight days from original action to docketing. Although *Moreno* specifically dealt with initial post-trial processing, the same timeliness standards logically apply to cases returned by this court for new post-trial processing. Here, 231 days elapsed between our return of the record and the convening authority's completion of the action ultimately docketed with the court, considerably longer than the *Moreno* standard, and without the requirement to generate a transcript of the proceeding—111 days beyond the *Moreno* standard, for a total of at least 188 days of facially unreasonable delay.

The second *Barker* factor also weighs heavily in favor of Appellant. In *Turpiano I*, we held that there was a prejudicial due process violation in the post-trial processing which gave rise to the remand. 2018 CCA LEXIS at *24–25. Specifically, we found the SJA discussed new matters from outside the record with the CA without providing Appellant notice and opportunity to respond to those matters pursuant to R.C.M. 1107(b)(3)(B)(iii). *Id.*

On remand, the post-remand SJAR was served on Appellant a mere eight days after the case was returned. Unfortunately, it took another 223 days for the post-trial processing to be completed. Excluding the 20-day extension Appellant was given to submit clemency matters drops the overall number to 203. While Appellant excludes the 59 days the CA took to act on the case from his claim of unreasonable delay, we consider it in our prejudice analysis below. Appellant correctly asserts the Government failed to timely notify the victims of their right to submit matters and then improperly extended the deadline for them to submit matters, which neither victim actually provided. Here, the Government did not serve the SJAR on the victims until 37 days after the SJAR was served on Appellant and seven days after Appellant's clemency was received. Despite this delay, after another 21 days had passed, the Government *sua sponte* reached out to ensure the victims did not want to provide matters, in direct contradiction to the requirements of R.C.M. 1105A. Six days later, one victim opted not to submit matters and the other never responded. While the Government's efforts to check back with the victims after receiving nothing appears admirable, it was not authorized and only prolonged the delay. The trial level personnel assert that they were unaware that the victims' right to submit matters applied in this situation, but they only made a phone call to AFLOA/JAJG two or three days before the Addendum was signed. From the time the one responsive victim declined to submit matters it took another 15 days to complete the Addendum and five more days to serve it on Appellant.

The same day Appellant received the Addendum, he sent an email to the CA directly. The Government asserts that as a result, they had to prepare a second Addendum, which took 13 days. The second Addendum does not contain any additional legal analysis and again recommends the CA approve the adjudged sentence. The Government asserts that we should attribute this time to Appellant. We disagree. While it is true that Appellant's decision to communicate directly with the CA is a bit unusual, Appellant had been waiting almost seven weeks since he submitted his clemency package. The second Addendum only further delayed the post-trial processing. On 21 December 2018, after 59 days of deliberation, the CA signed the action disapproving Appellant's dismissal and CMO No. 7 was prepared the same day.

The problem is that CMO No. 7 returned the record of trial to TJAG for review under Article 69(a), UCMJ, not this court for further review under Article 66, UCMJ. The record is not clear as to when the post-trial processing package was sent to the Appellate Records Branch but we do know that on or about 13 February 2019, the Appellate Records Branch notified the base legal office that the format of the action was incorrect—54 days after action. CMO No. 11 was signed 13 days later—67 days after action. After the "new" action was signed on 26 February 2019, Appellant requested and received an unredacted copy of CMO No. 7 (which he believed was the only post-remand CMO), identified his erroneous social security number and notified the wing legal office. They promised to correct it, but they too were unaware that there were now two additional CMOs in the case, both of which had the same erroneous social security number. They alerted the GCMCA legal office, located in the same city, of the error. The message was not received for four days, and not until after the post-trial package had been shipped to AFLOA/JAJM, 256 days after the case was remanded for new post-trial processing.

Appellant asserts the Government acted in bad faith by knowingly forwarding an erroneous action to the court.[7] The Government asserts that due to minimal manning, the message was not received before the documents were mailed, and the GCMCA legal office "had no reason to believe the documentation contained any errors, and therefore the primary focus was provid-

---

[7] Appellant also asserts that the post-trial processing package was incomplete in that many of the attachments were "missing." However, Appellant's counsel indicated that they would not raise this as an issue if there was evidence the CA considered all of the matters provided. The attachments are all included in the record, albeit not necessarily where one might expect to find them. Additionally, the CA did provide an affidavit indicating she reviewed all matters submitted by Appellant and no further analysis is warranted.

ing the court with the completed post-trial processing documentation in a timely fashion." There are multiple flaws in the Government's position. First, the 21 December 2018 action Appellant received on 7 March 2019 had been revoked and replaced with a new action on 26 February 2019, but based upon the record before us, the individual(s) with whom both Appellant's counsel and her office staff member spoke to on 7 and 11 March 2019 was unaware of these subsequent actions. The characterization of a sense of urgency is misplaced by this point in time. While the base and/or GCMCA legal office's error of forwarding the case for review under Article 69 vice Article 66 can be attributed to an honest misunderstanding of the jurisdictional rules of appellate review, an erroneous social security number is indicative of a lack of attention to detail. Under normal circumstances, this "small administrative error" might be noted without further discussion. While this administrative error alone does not materially prejudice a substantial right of Appellant, the unique circumstances of this case elevate this error to a different level, and contributes to the specter of gross indifference or institutional neglect.

With regard to the third *Barker* factor, Appellant asserted his right to timely appellate review each time he filed assignments of error with this court. Additionally, in his email to the CA on 10 October 2018, he stated, "I don't know when you received my clemency submission, but it was submitted to your legal office over 7 weeks ago. I fear [the CA] may now feel rushed to make a decision on my case because it is due soon." We find that he did not waive speedy review and find this weighs minimally in favor of Appellant.

The fourth *Barker* factor addresses prejudice. In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an Appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–40 (citations omitted). However, Appellant has failed to specify any particular prejudice arising from the post-trial delays, and appears to rely instead on our authority to grant relief for post-trial delay under Article 66(c) even in the absence of specific prejudice. *See Tardif*, 57 M.J. at 224; *Gay*, 74 M.J. at 744. Nevertheless, we have carefully considered whether the record before us demonstrates prejudice to Appellant.

In this case, the most significant articulable prejudice was that Appellant was repeatedly and continuously impeded in his ability to exercise his post-trial rights because of the actions, or more aptly delayed actions, of the Government. In the original post-trial processing, the Government's failure to provide Appellant with the additional matters from outside the record that were discussed with the CA led us to order a *DuBay* hearing and ultimately return the case for new post-trial processing. We found the failure to provide

notice to Appellant was a due process violation that may have affected the action the CA took in the case. *Turpiano I*, 2018 CCA LEXIS at \*16.

A new convening authority took action post-remand, and in fact granted relief by disapproving the adjudged dismissal. Unfortunately it took another 203 days for that to happen. Had the same CA taken action post-remand, we would be more inclined to believe Appellant would have obtained this relief sooner, presumably a more favorable outcome. However, the involvement of a new CA, who may have granted clemency for the same or differing reasons as the former CA, renders this analysis speculative. We have also considered that a due process violation may occur even in the absence of any specific prejudice if the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). The delays involved in this case, although unreasonable and confounding, arguably are not so egregious as to meet that standard.

However, we may avoid such speculation and analysis of public perception by instead relying on our authority under Article 66, acknowledged by our superior court in *Tardif* and *Gay*, to grant relief.

Post-trial processing continues to challenge legal offices, and this case suffered through two rounds of what is best described as systematic disorder at Joint Base San Antonio-Lackland. Despite the fact that this case was remanded because of error that prejudiced Appellant's opportunity to receive clemency, the subsequent post-trial process was even more inefficient. The Government does provide an explanation for many of the delays, but falls short of justifying them. We are mindful of our superior court's admonition that "delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court is the least defensible of all [post-trial delays] and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990) (internal hyphens omitted). Throughout the entire post-trial process the record shows a complete lack of any sense of accountability for timely processing. Even if the action and CMO No. 7 dated 21 December 2018 had been correct, we would have been concerned. The fact that it took another two months to "correct" the error elevates our concern. The apparent total absence of communication between the base and GCMCA legal offices during this time resulting in the "corrected" CMO not actually being correct requires us to once again remand this case.

The systemic deficiencies exhibited by the post-trial processing of this case, along with more than a dozen other cases cause us to change our focus from admonition of the legal offices at Joint Base San Antonio-Lackland to granting relief to Appellant. Appellant's counsel refers to the processing of this case as "a comedy of errors." We are exasperated, not amused, by the

11

failures of military justice administration at Joint Base San Antonio-Lackland requiring judicial action to ensure Appellant has not been prejudiced. We also acknowledge the facially unreasonable delay on the part of this court in issuing the original opinion, remanding the case for new post-trial processing. Some of that delay was a direct result of the necessity to order a *DuBay* hearing, requiring two rounds of pleadings by both parties. The transcript was ultimately over 1,400 pages and the record of trial consists of 16 volumes. This case was complex at the outset and became more so during the course of appellate review. We do not believe that setting aside the convictions as Appellant requests is appropriate but reduce the adjudged forfeitures to $7,353.00 pay per month for two months.

## III. CONCLUSION

The findings and modified sentence are correct in law and fact. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). We order a corrected action and a corrected CMO to reflect Appellant's correct social security number. *See* R.C.M. 1107(g). The final order will incorporate that correction as well as the modified sentence and the case need not be returned to us for further review.

Accordingly, the findings and modified sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court