# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32643**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jaquelin MENA**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 August 2021

———————————

*Military Judge:* Sterling C. Pendleton.

*Sentence:* Sentence adjudged on 17 December 2019 by SpCM convened at Ellsworth Air Force Base, South Dakota. Sentence entered by military judge on 15 January 2020:[1] Bad-conduct discharge, confinement for 110 days, forfeiture of $1,120.00 pay per month for 3 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Megan E. Hoffman, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire; Jordan E. Michel.[2]

Before LEWIS, ANNEXSTAD and OWEN, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Judge ANNEXSTAD and Judge OWEN joined.

———————————

---

[1] The entry of judgment is dated 14 January 2020 but was electronically signed on 15 January 2020 by the military judge. This opinion uses the date of the military judge's electronic signature.

[2] Mr. Michel was supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————————

LEWIS, Senior Judge:

In accordance with Appellant's pleas pursuant to a plea agreement, a special court-martial composed of a military judge alone found Appellant guilty of one specification of violation of a lawful order, one specification of making a false official statement, one specification of wrongful use of cocaine, one specification of aiding and abetting the wrongful distribution of cocaine, and one specification of wrongful introduction of cocaine onto Ellsworth Air Force Base (AFB), South Dakota, in violation of Articles 92, 107, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 912a.[3]

As part of her plea agreement with the convening authority, Appellant waived her right to a trial by members and requested to be tried by military judge alone. As such, the provisions outlined in Rule for Courts-Martial (R.C.M.) 705, *Plea agreements*, and R.C.M. 1002(d)(2), *Sentencing determination*, applied to Appellant's case.[4] The plea agreement specified the minimum and maximum confinement for each specification and required that all confinement periods be served concurrently. This resulted in a range of between 60 to 120 days of confinement that would be adjudged as part of the sentence.

On 17 December 2019, the military judge accepted the plea agreement and it became binding on the parties and the court-martial. *See* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d); *see also* R.C.M. 1002(a)(2) ("[T]he court-martial shall sentence the accused in accordance with the limits established by the plea agreement."). The military judge announced the sentence that same day. Consistent with the plea agreement, Appellant received a sentence of a bad-conduct discharge, confinement for 110 days, forfeiture of $1,120.00 pay per month for three months,[5] reduction to the grade of E-1, and a reprimand.

————————————————

[3] The specifications covered the time period from 14 June 2019 to 4 October 2019. References to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.). Further, the Military Justice Act of 2016, National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016), as fully implemented by Exec. Order 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018), applied to Appellant's court-martial and post-trial processing.

[4] *See* Exec. Order 13,825, §§ 5, 10, 83 Fed. Reg. at 9890–91.

[5] The military judge announced this part of the sentence as "two-thirds pay per month for three months." R.C.M. 1103(a)(2) states, "Unless a total forfeiture is adjudged, a

On 13 January 2020, after considering Appellant's clemency submission and consulting with the staff judge advocate, the convening authority took no action on the findings or sentence and provided the language for Appellant's reprimand.[6] On 15 January 2020, the military judge signed the entry of judgment. On 22 January 2020, the court reporter certified the record of trial.

On 30 January 2020, a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was convened by order of the military judge after he learned that he failed to admit the sentencing exhibits offered by the Defense. The military judge admitted Defense Exhibits A through Q without objection and noted that he considered the exhibits during his deliberations and they were "de facto" admitted during the trial. On 18 February 2020, the court reporter certified the transcript of the proceedings. On 27 February 2020, the record of trial was docketed with our court.

Appellant raises two assignments of error: (1) whether she was deprived of her right to a speedy trial when 44 days passed from when the convening authority declined to take action and when the case was docketed with our court; and (2) whether the sentence is inappropriately severe. We find no material prejudice to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

Appellant's first permanent duty assignment was Ellsworth AFB, South Dakota. She arrived in January 2019 and lived on-base in the dormitories. Appellant's roommate was Airman First Class (A1C) MD. A1C MD introduced Appellant to A1C EH, who lived off-base in Rapid City, South Dakota. The three women became friends and by April 2019, Appellant knew that A1C MD and A1C EH were involved in illegal drug use.

In June 2019, at A1C EH's off-base apartment, Appellant was offered cocaine and snorted a line of it off A1C EH's cellphone using a rolled-up dollar bill. Appellant knew that the substance she snorted was cocaine "[b]ased on the way [she] felt after [she] used it" and because A1C EH "repeatedly talked

---

sentence to forfeiture shall state the exact amount in whole dollars to be forfeited each month and the number of months the forfeiture will last." Here, the Statement of Trial Results (STR) and entry of judgment both reflect the forfeitures as $1,120.00 pay per month for three months. Appellant has not claimed prejudice from the military judge's failure to specify the whole dollar amount of the forfeitures when the sentence was announced and we find none.

[6] Based on the dates of the offenses and Appellant's sentence, Article 60a, UCMJ, 10 U.S.C. § 860a, and R.C.M. 1109 guided the convening authority's decision on action. *See* Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. at 9890.

about it, calling it cocaine, Coke, or the slang term blow."

In July 2019, Appellant was in her on-base dormitory suite with A1C MD and A1C EH. A1C EH learned that her drug dealer "Chef" had cocaine. Appellant knew that "Chef" was A1C EH's drug dealer and agreed to drive A1C EH to pick up the cocaine off-base and then drive A1C EH to another off-base location so A1C EH could sell some of the cocaine. While Appellant was initially hesitant to be involved, she agreed to drive A1C EH as A1C EH had been drinking alcohol and A1C MD was restricted to base.

As planned, Appellant drove—with A1C EH as a passenger—to a parking lot in Rapid City, South Dakota. A1C EH exited Appellant's vehicle and obtained cocaine from "Chef." Appellant did not see the exchange but knew it was happening. A1C EH returned to Appellant's car with the cocaine, and Appellant drove to a parking lot near Ellsworth AFB. A1C EH again exited Appellant's vehicle and talked to a man that Appellant did not know. When A1C EH returned to Appellant's vehicle, A1C EH was happy and confirmed that she sold some of the cocaine to the man. Appellant stipulated at trial that the man who bought cocaine from A1C EH was an Air Force enlisted member. Appellant agreed that she shared A1C EH's criminal intent to distribute cocaine and that she facilitated the distribution by transporting A1C EH to obtain the cocaine and to the location where it was distributed.

After A1C EH returned to Appellant's car after distributing cocaine, A1C EH pulled out a small baggie with white powder in it and showed it to Appellant. Appellant knew the white powder was cocaine. Knowing there was cocaine in her car, Appellant drove onto Ellsworth AFB and back to her dormitory room. Appellant knew that she introduced cocaine onto a military installation controlled by the armed forces.

Less than a week later, A1C EH and A1C MD were apprehended and ordered into pretrial confinement for their involvement with illegal drugs. Agents from the Air Force Office of Special Investigations (AFOSI) interviewed Appellant as a witness for these investigations. Appellant told the AFOSI agents that she had never seen anything that would suggest that A1C EH and A1C MD were drug users. This statement was totally false as Appellant had known since April 2019 that A1C EH and A1C MD used illegal drugs, and Appellant was present when the two had used drugs on several occasions.

After AFOSI interviewed Appellant, Appellant's commander issued a written order prohibiting Appellant from having "contact of any kind" with A1C EH and A1C MD. A specific provision prohibited "verbal contact (in person and telephone)." Appellant acknowledged the no-contact order in writing.

On 4 October 2019, A1C EH—still in pretrial confinement and now confined at Ellsworth AFB—called Appellant using the confinement facility's

phone. The call was monitored by a security forces member who recognized Appellant's voice and knew that a no-contact order was in place between Appellant and A1C EH. The security forces member terminated the call after about 30 seconds. During the providence inquiry, Appellant explained that she knew she was "to have no contact of any kind" with A1C EH and that she (1) answered the phone; (2) realized it was A1C EH; (3) failed to hang up; (4) knew her failure to hang up was wrong; (5) knew the potential consequences for violating her commander's order; (6) knew the order was valid and that she had a duty to obey it; and (7) that she failed to obey it. Appellant confirmed the phone call was terminated by someone else.

## II. DISCUSSION

### A. Speedy Post-Trial Processing

#### 1. Additional Background

Appellant argues that the delay of 44 days between when the convening authority declined to take action on the findings and sentence and the docketing of the record of trial with our court is facially unreasonable and warrants sentence relief. Appellant notes that she served 72 days of her confinement sentence before the record of trial was docketed with our court.

In response, the Government argues the delay was not facially unreasonable and that Appellant was not prejudiced by the delay. The Government cites our decision in *United States v. Livak*, 80 M.J. 631 (A.F. Ct. Crim. App. 2020) where the period of delay from the end of trial to docketing was 82 days and we found no facially unreasonable delay, no due process violation, and granted no relief.

#### 2. Law

We review whether an appellant has been denied the due process right to a speedy post-trial review de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006); *United States v. Rodriguez*, 60 M.J. 239, 255 (C.A.A.F. 2004). *Moreno* established a presumption of unreasonable delay, triggering the *Barker v. Wingo*, 407 U.S. 514 (1972), four-factor analysis, where "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *Moreno*, 63 M.J. at 142. "Delays involving this essentially clerical task have been categorized as the 'least defensible of all' post-trial delays." *Id.* at 137 (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)).

The four-factor analysis set forth in *Barker*, 407 U.S. at 530 is: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at

135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). When this four-factor analysis is triggered, the factors are balanced, with "no single factor being required to find that post-trial delay constitutes a due process violation." *Id*. at 136 (citing *Barker*, 407 U.S. at 533).

However, the United States Court of Appeals for the Armed Forces (CAAF) has held that where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF adopted a post-trial delay framework for analyzing prejudice using the following interests: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." 63 M.J. at 138–39 (citations omitted).

"[A] Court of Criminal Appeals has authority under Article 66[, UCMJ, 10 U.S.C. § 866,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C. § 859(a),] if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted). We consider the factors announced in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), to determine if *Tardif* relief is appropriate.

As we held in *Livak*, 80 M.J. at 633, the due process right to timely post-trial review that the CAAF sought to safeguard in *Moreno* endures for cases referred on or after 1 January 2019. However, we have noted:

> [a]dapting the *Moreno* analysis to the new rules will not be a simple matter of substituting the military judge's "entry of judgment"—or the convening authority's decision whether to take action on the trial results, or the certification or completion of the record of trial, or any other post-trial event—into the place of "convening authority action" within the *Moreno* framework for determining facially unreasonable delay.

*Id*. (quoting *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *5 (A.F. Ct. Crim. App. 16 Dec. 2019) (unpub. op.) (per curiam)). In *Livak*, we decided to apply an aggregate standard threshold of 150 days from the day of sentencing to the day of docketing after we found it appropriately protected an appellant's due process right to timely post-trial review and was consistent with *Moreno. Id*. at 633–34 (citation omitted).

**3. Analysis**

Here, the total number of days from the announcement of sentence to docketing with our court is 72 days. This is well within the 150-day aggregate standard we set forth in *Livak*, and we therefore find no facially unreasonable post-trial delay and no due process violation.

Even if we assume there was a facially unreasonable delay from the time the convening authority signed the Decision on Action memorandum to the date of docketing and assess the four *Barker* factors, we still find no due process violation. In that assessment, the first *Barker* factor—the length of the delay—weighs in Appellant's favor. The second *Barker* factor—the reason for the delay—weighs in Appellant's favor, but only slightly. Some of the delay in docketing arose from the need for a post-trial session to address the military judge's failure to admit the defense sentencing exhibits. While the parties and the military judge should have identified this error prior to adjournment, it was appropriate to conduct a post-trial session to ensure the exhibits were admitted and to confirm on the record that the military judge considered them during his deliberations on sentence. The third *Barker* factor—the assertion of the right to timely review and appeal—weighs slightly in the Government's favor as Appellant did not raise the matter of speedy post-trial processing during the post-trial session with the military judge or prior to the case being docketed with our court.[7] Appellant declares she was unaware of the requirement to demand speedy post-trial review. We are not persuaded. The topic was covered in the written post-trial and appellate rights advisement, an appellate exhibit in the record of trial signed by Appellant and her trial defense counsel. The military judge addressed the post-trial and appellate rights with Appellant prior to sentencing deliberations and ensured Appellant had no questions about her rights. The written advice explained "one of the issues appellate courts look at to determine whether a delay warrants relief is whether you asserted your right to a timely review of your case." The fourth *Barker* factor—prejudice—weighs in the Government's favor based on the post-trial delay framework and our evaluation of Appellant's three interests. First, where the appellant does not prevail on the substantive grounds of her appeal, as in this case, there is no oppressive incarceration. *Moreno*, 63 M.J. at 139. Second, where an appeal results in our affirming the findings and sentence, like here, an appellant's ability to present a defense at a rehearing is not impaired. *See*

---

[7] We granted Appellant's unopposed motion to attach two declarations which address this issue. The post-trial delay in this case is evident from "entire record," and we understand we are permitted to supplement the record "when deciding issues that are raised by the materials in the record." *See United States v. Jessie*, 79 M.J. 437, 441–42 (C.A.A.F. 2020). Accordingly, we understand that we are permitted to consider the declarations in deciding the issue of post-trial delay.

*id.* at 140. Third, with regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Here, appellate defense counsel argues Appellant could "reasonably have expected" that we would grant her sentence relief if we reviewed her case expeditiously while she was still in confinement. We disagree and find Appellant suffered no particularized anxiety and concern that is distinguishable from other Airmen awaiting post-trial processing and appeal.

Further, absent a finding of prejudice as a result of delay, there is no due process violation unless it "adversely affect[ed] the public's perception of the fairness and integrity of the military justice system." *See Toohey*, 63 M.J. at 362. We do not find the post-trial delay, some of which is attributed to the post-trial session, is to the degree that it adversely affected public perception of fairness and integrity as articulated by *Toohey*.

We have considered whether relief is appropriate under the circumstances for excessive post-trial delay without a showing of prejudice under our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority. *See Tardif*, 57 M.J. at 224 (citation omitted). Considering all the facts and circumstances, and applying the factors articulated in *Gay*, we decline to do so. *See id.* at 224; *Gay*, 74 M.J. at 744. We find relief inappropriate because it took only 72 days from the date Appellant was sentenced to the date her record of trial was docketed with our court.

## B. Sentence Severity

### 1. Additional Background

Appellant argues that her sentence is inappropriately severe and we should grant "meaningful sentence relief" based on her (1) being pressured to use cocaine; (2) only meaning to protect her friends when lying to investigators; and (3) only meaning to protect her friendship with A1C EH when accepting a phone call from A1C EH. We analyze these arguments below.

Appellant also argues that she was not the instigator for the drug offenses, she accepted responsibility at trial and apologized to her unit, the Air Force, and those around her, and that she had a difficult upbringing. These matters are not in dispute and therefore do not require further elaboration or discussion below. We will consider each of them in determining sentence severity.

The Government disagrees that the sentence is inappropriately severe. In addition to the offenses, the Government describes some of the prosecution exhibits admitted during sentencing. These exhibits, admitted without objection, document additional misconduct shortly before and after the preferral of charges, including (1) a letter of reprimand that Appellant received for an off-base drunk driving incident in November 2019, the same month charges were

preferred and referred; and (2) a letter of reprimand for *inter alia* attempting to contact A1C EH at the Naval Consolidated Brig in Chesapeake, Virginia, on or about 2 December 2019.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d)(1), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 3. Analysis

Regarding Appellant's argument of being "pressured" to use cocaine, Appellant told the military judge in the providence inquiry that she "gave into the urging and used cocaine." Appellant agreed that she was not "forced" to use cocaine, and she could have avoided it if she wanted to do so. Appellant stipulated that she was not "coerced" to use cocaine. Appellant does not claim her plea was improvident or that she had a defense to the use of cocaine specification. We note that when Appellant used cocaine in June 2019, she knew about A1C EH's and A1C MD's drug involvement for about two months. While Appellant was initially "shocked to hear" about the drug use of her friends, by the time Appellant used cocaine, she had known about it for some time and "felt a real loyalty to them" and "let that loyalty take precedence." In our view, when Appellant chose to ingest cocaine, she made a conscious decision to place loyalty to her friends over her duty to obey the law.

Appellant claims that she only meant to protect her friends when lying to investigators. We are not persuaded. Appellant told the military judge, under oath, during the providence inquiry that she was "in self preservation mode" and that she intentionally tried to deceive the agents "in an attempt to protect [her]self and [her] friends." The record of trial shows Appellant lied not only to protect her friends, but to attempt to protect herself from law enforcement discovering her involvement with cocaine.

Appellant also argues that she accepted a phone call from A1C EH to protect her friendship with A1C EH. Appellant explained to the military judge in the providence inquiry that at the time of the call her "life was falling apart"

9

and that she had "lost the only support system [she] had." Appellant stated she now realized "trying to access what had become [her] only form of comfort was worse for both of [them] in the end." We can understand that Appellant and A1C EH appeared to be very close, but the explanation for violating the no-contact order provided only limited value for extenuation under R.C.M. 1001(d)(1)(A).

We have considered the nature and seriousness of the offenses and given individualized consideration to Appellant, her upbringing, her record of service, her acceptance of responsibility, and her pleas of guilty. Appellant's aiding and abetting A1C EH's distribution of cocaine and Appellant's introduction of cocaine onto Ellsworth AFB are both serious offenses. Appellant's subsequent decisions to make a false official statement to investigators and to violate the no-contact order with A1C EH were less serious offenses, but nonetheless important based on their timing and circumstances. After careful consideration of the above and the matters contained in the record of trial, we conclude the sentence is not inappropriately severe.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.[8]

FOR THE COURT

NATALIA A. ESCOBAR, Capt, USAF
Deputy Clerk of the Court

---

[8] We note the STR failed to include the command that convened this court-martial as required by R.C.M. 1101(a)(3). Appellant has claimed no prejudice, and we find none. *See Moody-Neukom*, unpub. op. at *2–3.